15-1630, NACCHP 15-1630, NACCHP Technology Co., Ltd. v. SanDisk Corporation 15-1630, NACCHP 15-1630, NACCHP Mr. Tan, are you ready? Good morning. May I please call? I will reserve three minutes for rebuttal. I would like to address the issue of incorrect claim construction first, and if time allows, I will also address the issue of insufficient fact-finding from the panel office. A key issue in this reexamination is the construction of the term directly accessing in Claim 1. We construed this term to mean accessing without communication protocol conversion, and the board construed this term to mean directly controlling access of the fresh memory. No, the board's claim construction is incorrect because this construction actually is against the planned meaning of the term. It is against the claim language itself, and also it's... How is it against the claim language? In claim language, for this particular term, the claim element actually as a whole reads directly access data based on USP standard through the established data exchange channel, and then by processing the data access operation requests issued by user. So clearly it's a data access, it's not a control operation. That's the language itself, made it pretty clear that's the data access instead of a controlling access. And also Claim 6, to further explain how this is performed, and the Claim 6 actually has many steps, but eventually the last element of Claim 6 is the firmware is supposed to return the results of the access back to the driver in the operating system. Maybe you can answer this. I mean, I found this case very challenging because there's so many issues and there's so many references, but it's my understanding, and I think I correctly understood this to be Sandus' argument, that even if you were correct on this claim construction, which I think this is the only one they maintain that you have not waived, that would only eliminate or affect the rejections based on the Terasaki reference, which was only one of any number of combinations that the board relied on in the obviousness analysis. And so if you take Terasaki off the table, you've still got other things going on in obviousness, and the other reference is it doesn't make any difference what this limitation is under any construction. It wouldn't make any difference on obviousness. Is what I'm saying correct? Well, Your Honor, that's what the Sandus' position is, and I think that it's questionable because there's two points I have. First of all, in the board decision, actually the board did not discuss this only related to Terasaki. Actually, in board's decision, it is discussed in the board decision 18, that's appendix 19, related to the reference Sato. So this is the only reference the board discussed in relation to Claim 1. So this is the place that the board also discussed this directly accessing in the last paragraph of page 18 of the decision. And it's in 19. So the second point I want to make is this is a key claim term, because that really makes the claim to invention actually different from the prior. And that claim construction, the board did not provide anything alternative to that construction. So if this construction is incorrect, and it is, and then the entire analysis is just not right. It's not, because every reference, whether it's McLeod or the other pen reference, these references, they all have to address this particular element. And also, if you, with the correct claim construction, and also use the look at element as a whole, our position is none of those references actually teach that element in Claim 1, which is the direct accessing element. And also, obviously, Claim 6, it's a little bit detailed operation. So none of those references actually teaches those elements with the correct claim construction. And Yona, actually you mentioned that there's some sort of waiver arguments, and also our position is none of the claim construction arguments actually can be waived, at least for two reasons. The first reason is those claim construction, it's not really new, because the board, the examiners, none of them actually provides explicit claim construction. So by discussing that, actually we already have those claim constructions in the original brief to the board. It's not explicit, but none of them did any explicit claim construction. So I think that's the argument actually should favor. I don't understand. I mean, do you agree that you made no claim construction, there was no claim construction dispute with respect to the special read instruction and the magnetic disk operation format? No, Yona, we actually, we tried to make a point that we already made, I mean, it's not a new argument. Where did you make it? Did you make the same arguments to the board below? I believe we did, but not very explicitly. What does that mean? That means we did not say this term means this. We did not say this. Okay, so the opposite of explicit, you say you made them implicitly? What are you saying? Right, we made it implicitly, yes. What does that mean? That means we mixed it together with the obviousness discussion, as did by the examiner and the board and the SanDisk itself. There's no explicit claim construction in this re-examination, other than the couple of directly accessing we talked about. But none of them actually provide anything explicit as, say, this term means this. It's just not there. So it's all implicitly made. Now you're arguing before us that the board incorrectly construed those terms. Exactly, but that's what I mean, too, is implicitly construing, mixed together with the 103 obviousness analysis, which we think also it's... It seems to me that you raised factual issues with respect to the terms, but I don't see that you argued how the claim construction impacted those factual arguments. Well, obviously it does, because if you insert it in a different way, obviously that now has to change. You're arguing that now. Yes, I understand that. But did you argue that below? We did. For example, on direct accessing, we did that for special read instruction. We also did that, but it's not in that very explicit way. I agree. But, yes, we did that. And also, the arguments we made in this appeal, it merely just supports the scope of the claim. At this court, in the CCS fitness case, it says certainly that even if it's a new argument, if it supports the scope of the claim construction, it should not be waived. And that's one argument we want to make on this. And also, these are just barely questions of law. For those construction of the term direct accessing and special read instruction, especially on special read instruction, as you know, that term itself has no plain meaning other than you have to look at it in the context of the specification. So this term actually has to be construed. And I also want to point out that there's a significantly insufficient of fact findings by the examiner and the board. Particularly, we want to point out that there's no clearly stated rationales for the combination because there's so many references and so many objections. And there's just no clearly stated rationale for combining those references. Sometimes as many as five references. And there's one single rationale used by the examiner, which is no more than applying a known technique to a known method to yield predictable results.  And the examiner did not discuss any state of the art, did not discuss anything of the level of person of honorary skill in the art. The examiner did not even look at the publication dates of the references, which was also made in this appeal. Which is also, Pally actually is alleging that this is a new argument. We think it's not a new argument because it's just to support our argument that says the examiner just failed to do sufficient fact finding. And therefore, there shouldn't be sufficient evidence for supporting those. Did you dispute the publication dates before the examiner or the board? Your Honor, we did not dispute the publication dates before the board. But in the examination, the examiner actually has a duty to perform independent investigation. If you think that's an error, then you should have argued that before the board, right? Yes, Your Honor, but if the error is so obvious, we do think that the examiner actually has a duty to get it right. Maybe the more obvious the error is, the more responsibility you have to argue it before the board. We did bear some responsibility, yes, but we do think that it's a question of law because it's not much fact finding, it's just looking at the first page of the reference. And also, our argument is this actually supports... Yes, Your Honor, we did bear some sort of responsibility, but I think the argument we made shows that the examiner actually failed to do the fact findings together with all the other insufficient fact finding examples here. For example, there's so many factors or things that the examiner failed to consider when considering our declarations, and it does not even discuss in the record for all these documentary evidence we supported, like we have photos of prototypes, firmware block diagrams, circuitry diagrams, and schematics, source code, and flash disk specification, memory maps, all those things. It's never discussed. And also, another clear indication of there's no sufficient evidence for support the board decision is they use the wrong reason to reject our declaration and the exhibits. Mr. Tanton, you're well into your rebuttal, so I think you might want to sit down and say... Okay, thank you. May it please the court, Daryl Adams for the Appley Sandisk Corporation. If I first might address a few of the issues that were raised in the opening argument. The panel is correct. The directly accessing only impacts the Terasaki reference. My colleague points out that there was some discussion of the board at A19 that had to do with a different issue, had to do with the motivation combined, actually a teaching away issue. Most importantly, nowhere in the briefing that this court is the issue of whether directly accessing impacts any of the references other than Terasaki. So on this appeal, and indeed below, before the board and before the examiner, there was never an issue about directly accessing as related to anything but Terasaki. Let me ask you about the other point we were discussing with your friend, which is that we're seeing a lot of IPRs come up now. And it is the case that somehow parsing between what we do in district court proceedings, clearly claim construction markment is separate from the obviousness of validity issues. It seems like in some of these IPRs we're seeing, it's not really posited as a claim construction question, that claim construction disputes do arise in the context of the obviousness analysis. Do you understand what I mean? So why isn't that kind of OK or give you a little flexibility in terms of saying waiver of a claim construction if clearly the claim construction issue was joined in connection with obviousness? Well, Your Honor, first I'd point out this is not an inter-parties review. The standards for inter-party review are vastly different than the standards for inter-party re-examination. In fact, there is no longer an inter-parties re-examination as the courts review. The standards are very different. The standards in an inter-party re-examination were very similar and were handled just like a prosecution. The examiner put forth their findings as to what was in the art. The burden then shifted to the patent owner to point out the errors in the examiner's determination or rejection. Interesting, we have no explicit, we being the petitioner, have no explicit part in that. We're completely a third party. So the answer to your question is, although it may be more similar in a quasi-litigation re-examine inter-parties review, here that's not. It's surely the burden is on them to identify any errors that they perceive within the examiner's rejection. They failed to do it. And it's really a red herring here, your honor, in the fact that they're just trying to raise a legal issue for the purposes of appeal. For example, magnetic disk operation. Their argument is really just restating the ordinary meaning. They say, well, magnetic disk operation is an operation in magnetic disk format. That doesn't raise a claim. That's just the ordinary meaning. They didn't raise it to the board. We don't dispute, in fact, we established that the prior references teach an operation in magnetic disk format. So the claim construction arguments they're trying to raise here for the first time don't affect the outcome. The things that they raise in there were considered by the examiner, were considered by the board. So it's really just trying to avoid the heavy burden of proof. Instead of establishing that there is lack of substantial evidence to support the board's finding that the magnetic disk operation format was in the prior art. They're trying to say, well, the examiner or the board or somebody should have construed this term. Then we can now have an issue of law and hope that you remand back to the board with this, quote, new construction. That's really all they're doing here with the claim construction issue. I'll point out one other issue. They bring up the publication dates. They admit that they don't dispute the publication dates, but then they say the examiner has a duty to independently determine those publication dates. In their reply brief, they cite to, I have the quote here, I apologize, the standard innovations case for this. But again, the standard innovation case is an inner party's review. In an inner party's review, we, the party contesting the validity, clearly does have a burden of establishing the publication dates. That was an inner party's review. This is an inner party's re-exam. We had no burden to establish it. And all the examiner was required to do was set forth the basis for the rejection, and then the burden switches to NETAC to point out any errors in that. Your Honors, this is an unusual case. It's an unusual case, A, because of the number of issues that are raised. It's also an interesting case or unusual case in the fact that almost all of the arguments raised at this court were not raised to the board. The vast majority of arguments. In addition, it's an unusual case in the fact that there's so many different paths to affirming the board's decision. Now, I would like to address one of those paths. And I want to emphasize, it's merely one path. And that is the path that we identified in our brief, which is the Satori combinations combined with the NETAC reference. Now, each and every argument that NETAC raises in respect to the Satori combinations was not raised to the board. Every one of those arguments is newly raised here. In their reply brief, let me back up. We point that out, of course, in our brief. In their reply brief, they don't even attempt to dispute that. So we go through each of their arguments. We say this was not raised below the reply brief. They don't even attempt to dispute it. And in fact, they all are new. But Your Honor, we don't have to rely, in this case, on the procedural or the waiver issues. We also win on the substance in this case. For example, the bond reference. The rejection is based on the bond reference. Aside from all those issues being waived, the arguments they make with respect to the bond references don't even really address the issues. With respect to the bond reference, they really raised very few arguments. And again, we responded to all those arguments. They don't even try to dispute our issues in the reply brief. They completely ignore the bond reference. First, they argue, Your Honor, that magnetic disk operation is not disclosed in bond. But when you look at their argument, the citations they have is to show that it's not disclosed in bond, too. This is their brief at page 30, Your Honors. Their real argument is that bond 2, which is a secondary reference that was incorporated by reference into bond, doesn't disclose magnetic disk format operation. Bond 2 clearly does. If you look at column 8, line 29 to 30, it explicitly refers to hard disk memory, which is a magnetic disk format. Likewise, Your Honor, the other argument they make is that the special read instruction of claim 6 is not disclosed. Here, Your Honor, again, they argue that bond doesn't disclose this, but they don't address the issue. Actually, Your Honor, they make no argument at all. It's a single, one-sentence statement that bond doesn't disclose this. But bond 2, which is part of the combination that's incorporated by reference in bond, clearly discloses disk operation and conversion. So those are two separate paths to affirming the board's decision. One, based purely on the waiver issues, each of the arguments with respect to the Satori combinations was not raised below to the board. There's no dispute that they weren't raised below. NETAC makes no arguments as to how they were raised. Second, Your Honor, if we just ignore the waiver issues and looked purely at the substance, there's no real issue here that the bond combinations anticipate each of these references. Now, the other issue they raise is the lack of the examiner to make substantial fact-finding. Well, Your Honor, they just really ignore the exemptions. First of all, it's waived. It wasn't raised to the board. This is an issue that's particularly pertinent to the board. You're arguing that the examiner did not follow PTO procedure, but yet they don't raise it to the board. They don't give the board the opportunity to look at their own procedures and decide whether the examiner did it. Had they raised it to the board, we would be reviewing this issue based on an arbitrary and capricious standard. Was the board arbitrary and capricious in their determination about what the examiner did? They didn't raise it to the board. We don't have any board findings. There's really nothing to review. But even so, Your Honor, if you look at the record, we point this out in our briefing, the examiner did all that it was required to do. The examiner set out what the prior art was, set out what elements were disclosed in each of the prior art references, set out the motivation to combine the references. That's all that's required. Furthermore, the examiner incorporated many pages of claim charts that were included in the original request, incorporated in reference back to our arguments as to the motivation combined. So there's really no... First of all, it's waived. Second of all, the examiner did all the examiner was required. NETAC has the burden to point out where the examiner's wrong. And they did. They repeatedly tried to point out where the examiner was wrong. And when those arguments would get rejected, they'd come up with a new set of arguments. And when they would get rejected, you'd come up with a new set of arguments here. Now, one last point I want to raise on that. They raised for the first time in their reply brief that the examiner didn't make an explicit finding of the level of ordinary skill. This wasn't raised in their opening brief. They addressed motivation to combine, scope and content of prior art, but they never raised the argument that the examiner didn't explicitly identify the level of ordinary skill. So it's waived. It was waived for the first time in reply brief. But, Your Honor, the law is that the examiner doesn't have to make an explicit finding of what ordinary skill is. In fact, very few examiners make an explicit finding on that issue. And the law provides that unless it's in dispute, the examiner doesn't have to make an explicit finding. Of course, everything has to be done through the prison of a person of ordinary skill, but there doesn't have to be an explicit finding. And, in fact, NETAC's own case in Ray, cited in their reply brief, in Ray, and I will not get this name correct, via Yonfathon, establishes that very point, Your Honor, that it's not necessary. I'm happy to address any other issues. If you have your argument, thank you. Your Honor, we just tried to correct a few points. Your Honor, we just tried to correct a few points. The first one is Sartoria, and we actually, why we argued, as we did in the brief, is because the board actually made new decisions based on Sartoria reference. That Sartoria reference actually was the only reference Sandex did not use for the co-panning case. But the board actually used this as a main reference to reject all the claims of 672 patent. And the board actually used, the board actually added different combinations to reject this claim. We filed a request for a hearing to address the new grounds of rejection issues, but basically rejected our request. So the Sartoria reference actually is the weakest. It's just merely a USB peripheral device. It's not, there's no, I mean, a person with honors in art cannot even think to combine this with a storage device, as it is in this particular case. We have this one piece. Final thought, your time has expired. Okay. Thank you. We thank both counsel and the cases submitted.